**GREEN, Plaintiff-Appellant v. HENDERSON, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 3418. Decided November 19, 1942.

L. P. Henderson, Columbus, for plaintiff-appellant.
Clarence B. Folkerth, Columbus, for defendant-appellee.

214

## OPINION

By HORNBECK, J.

The notice of appeal in this case recites that it is upon questions of law and fact. The court has taken the cause under advisement by reason of a written stipulation of the parties that it may be submitted upon the briefs without oral argument. At the outset we find among the papers a motion of the appellee to dismiss the appeal for the reason that no bond has been given as required by the statute. We find no notation of the giving of a bond and, therefore, the appeal on questions of law and fact should be dismissed which will be done. However, as there is a duly authenticated bill of exceptions before the court, we assume that counsel are in agreement that we may hear the appeal upon the record before us. We, therefore, come to consider the appeal on questions of law from the judgment of the Common Pleas Court in favor of the defendant-appellee.

The cause below was tried to the court, jury waived, upon issue joined on a second amended petition and answer thereto.

There are two errors assigned. First, that the finding and judgment is against the manifest weight of the evidence and unsupported thereby; and, second, that it is contrary to law. It becomes necessary to consider only the first assignment of error.

Plaintiff alleged in his second amended petition that he was the owner of and entitled to the immediate possession of Lots Nos. 18, 19, 25, 27, 46, 68, 84, 102, 113, 132, 56, 83, 90, 91, 173, and 174 in Burnside Heights Addition to Franklin Township, Franklin County, Ohio; that for many years plaintiff maintained a confidential relationship with Charles A. Henderson, deceased, and the defendant, Rena Henderson, his widow, and that both of the Hendersons were plaintiff's confidential advisers in his business transactions and personal affairs. That the plaintiff is an aged man, uneducated, and that he under the guidance of Charles A. Henderson constructed houses of different types upon lots Nos. 18, 19, 27, 68, 25, 46, 56, 84, 113, 132, and 174. Plaintiff further says that on or about May 1, 1933, Charles A. Henderson requested him to sign a paper purporting to be a deed to Lot No. 19 in Burnside Heights Addition, which signing said Charles A. Henderson represented to be necessary in order to straighten up some matter which he claimed he did not have time to explain fully but would do so later. That, confiding in said Charles A. Henderson, plaintiff signed said paper in the presence of said Henderson only. Plaintiff further says that after the death of

Charles A. Henderson in October, 1940, he discovered that the paper he signed was a deed conveying not only Lot 19 to said Charles A. Henderson, but also Lots Nos. 25, 27, 46, 68, 84, 102, 113, and 132, which lots, said Charles A. Henderson had unlawfully and fraudulently caused to be interlined upon said deed and without the knowledge and consent of the plaintiff. Plaintiff further alleges that he also in October, 1940, discovered that said Charles A. Henderson had unlawfully and fraudulently caused his name to be forged upon another paper writing purporting to be a deed, conveying to said Charles A. Henderson Lots Nos. 18, 56, 83, 90, 91, 173 and 174 of Burnside Heights Addition. That said conveyance was without the consent or knowledge of the plaintiff and that this conveyance and the conveyance purporting to transfer title to lots 19, et, were without consideration and that there was no proper execution of said deed or deeds and no delivery of either of them to said Charles A. Henderson. Plaintiff prayed that the deeds be declared null and void, expunged from the record, that he be restored to legal title and possession of the lots described in the deeds and that Rena Henderson be required to account for rents and profits that she has received from said lots and to all further relief to which he may be entitled. The answer of the defendant to the second amended petition denies any confidential relationship between the plaintiff and herself and the plaintiff and her deceased husband. She denies any unlawful and fraudulent representation having been made to the plaintiff to obtain his signature to the deeds, asserts there was a valuable consideration for said deeds and denies each and every other allegation of said petition.

The first deed described in the amended petition purporting to convey lots Nos. 19, 25 et, is in the record and marked Plaintiff's Exhibit No. 1. The deed purporting to convey lots Nos. 56, 83 et, is in the record, marked Plaintiff's Exhibit No. 2. We first determine whether or not, as claimed by the plaintiff, the evidence requires the conclusion that there was a confidential relationship existing between the plaintiff and Mr. Henderson at the time of the execution of the deeds. Upon this subject the plaintiff and Mrs. Henderson testified. The information elicited by an examination of the testimony on the subject is meager. The plaintiff says that he was at Mr. Henderson's office almost every day; that he, the plaintiff, signed any deeds that Mr. Henderson requested him to sign It appears that the plaintiff at the time of trial was seventy-seven (77) years of age, a man of very limited education, never having attended school, who can barely read and write, was greatly perturbed by his examination on the witness stand, and who, when attempting to read the deeds which were handed to him for inspection, held them upside down. He apparently failed to grasp their significance.

He stated that he understood Mr. Henderson to be a man who was a highly educated individual and because of plaintiff's illiteracy and Mr. Henderson's knowledge plaintiff relied upon him. As the plaintiff put it, "I just depended on him. I thought he was straight." It further is to be gleaned from the records that many transactions were carried on between these parties, the plaintiff worked for Mr. Henderson over a considerable period of time, the nature and extent of which does not definitely appear. Mrs. Henderson testifying on the subject says in substance that no fiduciary relationship existed between her husband and the plaintiff. From the limited testimony, the substance of which we have recited, it is probable that there was a confidential relationship existing between plaintiff and Mr. Henderson. However, it is not established by any testimony over and beyond that of the plaintiff, and much that he says on the subject are mere conclusions. We, therefore, approach the consideration of this record assuming that the trial judge has the right to find that the relationship between the plaintiff and Mr. Henderson was that of one doing business with another at arm's length and that, therefore, the burden of proving fraudulent acts by Mr. Henderson in securing the respective deeds, Plaintiff's Exhibits Nos. 1 and 2, from the plaintiff is upon him by clear and convincing evidence.

First, examining plaintiff's Exhibit No. 2, it is asserted that the signature, Robert Green, upon this deed is a forgery. We have examined the evidence upon this question and the many admittedly true signatures of Robert Green appearing in the record. The handwriting expert who testified said that the signature of the plaintiff, grantor, on the exhibit was true and genuine. We are not satisfied that the signature is forgery, although, if the burden were upon the defendant to establish its genuineness we doubt if we could find that it is the true signature. Without detailing the particulars wherein the signature is suspicious, we are satisfied to say that there are many instances in it which indicate that it is spurious. There also is considerable doubt if Rena Henderson, the defendant, who was a witness to the signature of the grantor and who notarized the execution of the instrument, was present at the time the deed was signed or actually took the acknowledgment of the grantor. George W. Noland, who witnessed the deed with Mrs. Henderson, says that he never signed a paper for Mr. Henderson when she (Mrs. Henderson) was there. Because the proof of the plaintiff does not attain to the degree requisite to establish forgery or fraud in the execution of this deed, we find no prejudicial error in the judgment on the issue drawn as to its validity.

We then consider Plaintiff's Exhibit No. 1. This instrument purported to transfer title to nine lots. It was admittedly signed by Robert Green and it was witnessed by Rena Henderson and Sadie

Richberg and notarized by Rena Henderson. It was Mrs. Henderson's testimony that this deed was signed at about 7:30 o'clock in the morning at the office of her husband on West Broad Street, Columbus, Ohio; that she read the instrument in its entirety; that Robert Green, Mr. Henderson, and both witnesses were present at the time of the execution of the instrument and that the witnesses signed in the presence of the grantor, the grantee, and of each other. The plaintiff states that no one was present when he signed the deed but Mr. Henderson.

Sadie Richberg, apparently an impartial witness, testified that when she signed the deed Mr. Henderson only was present and specifically asserts that she did not see Mr. Green and that Mrs. Henderson was not present. She, also, testifies fully enough to permit the inference that it was the practice of Mr. Henderson to have her so sign deeds, and such inference may be drawn from the testimony of Mr. Noland. It is interesting to note that although Plaintiff's Exhibit No. 1 carries nine lots in its description and Exhibit No. 2 carried six lots in its description, all of which were in Burnside Heights Addition, and the grantor and grantee were the same persons, both deeds were signed and executed on the same day.

There is another deed in the record made by the plaintiff to Mr. Henderson, Defendant's Exhibit G, concerning which the plaintiff said "it looks like Mr. Henderson has put another one over on me", or words to that effect. The validity of this deed is not brought into question by the pleadings, but in view of the dubious character of the other transactions involved, it is somewhat doubtful, at least, if this deed was notarized in the presence of the grantor and the first attesting witness. It is obvious that the grantor's name and the first witness' name are signed in different ink and with a different pen than that of the second witness and the notary public. Of course, this is not conclusive but it is suggestive.

The outstanding fact upon which we draw our conclusion that the numbers of certain lots appearing in the description of plaintiff's Exhibit No. 1 were not in the instrument when signed by the grantor is found by an inspection of the exhibit itself. It is apparent that as originally typed the description read,

"being lots Nos. Nineteen (19) and Twenty-five (25) of Burnside Heights Addition to Columbus, Ohio."

Thereafter were added 27, 46, 68, 84, 102, 113, and 132. The insertion is so obvious as to be true to a point of demonstration. In the description as originally written, the lots Nos. 19 and 25 were carried both in writing and figures but the added lots appear in figures only. There has been an "and" between 19 and 25 on the first line of the description but the "and" has been x'd out. We recognize that it is possible that the added numbers which have been interlined could have been so inserted before the Robert Green

signature but in view of all the other facts which cast serious doubts as to the validity of the formalities in the execution of the instrument, we are satisfied that these numbers were not in the instrument when Robert Green signed it.

We, therefore, hold that as to those lots the numbers of which are clearly interlined, namely, 27, 46, 68, 84, 102, 113, and 132, the evidence is convincing that the deed which the plaintiff signed is an invalid instrument and would support a finding and judgment that as to such lots it should be set aside and cancelled of record.

The record also discloses that since the death of Mr. Henderson the defendant had paid the taxes on the lots described in the deed, Plaintiff's Exhibit No. 1. There also have been improvements made thereon since that date for which defendant has paid. Likewise, there was indebtedness existing from the plaintiff to Mr. Henderson at the time of tranfer of the lots involved.

The plaintiff further claims that the two deeds in question are invalid because Rena Henderson who notarized the execution of said deeds and witnessed them had a pecuniary interest as the wife of the grantee in the property conveyed. Supporting this claim are cited **Amick v Woodworth, 58 Oh St 86,** and several cases from other jurisdictions. All of these cases are to effect that a grantee in a deed or one who has legal or pecuniary interest in the property conveyed may not witness or notarize such instrument. The interest of Mrs. Henderson at the time that she witnessed and notarized the deeds was merely an inchoate right of dower and not such legal title or right which would disqualify her to act in either or both capacities. It is further asserted that defendant had some interest in a note which was at one time owing from the plaintiff to her. The proof is not made of the existent indebtedness of the plaintiff to the defendant at the time of her signatures to the deeds.

An examination of this record is convincing that much helpful testimony could be forthcoming if a determined effort was made to produce it. If the case is tried again every effort should be made to give the jury, or if jury waived, the trial judge, a full and complete picture of the transaction between the plaintiff and Mr. Henderson. It is obvious that if, upon a second trial, it be determined that either or both of the deeds should be set aside, that an accounting would have to be made by the plaintiff to the defendant before cancellation may be made of the deeds of record.

We hold that the finding and judgment of the trial court should be reversed as being against the manifest weight of the evidnece upon the question of the validity of the deed, Plaintiff's Exhibit No. 1, as it relates to the description of all numbered lots in said deed, except Nos. 19 and 25.

GEIGER, P. J., and BARNES, J., concur.